# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

Vernon Lawson and Lavernia
Luckett Lawson,

|  |  |
|---|---|
| Plaintiffs, | Case No. 12-cv-14326 |
|  | Hon. Judith E. Levy |
|  | Mag. Judge Michael J. Hluchaniuk |

v.

Bank of America, N.A., et al.,

                          Defendants.

_____/

## OPINION AND ORDER GRANTING DEFENDANT'S [16] MOTION TO DISMISS PLAINTIFFS' [11] AMENDED COMPLAINT

This is a foreclosure case. Plaintiffs Vernon and Lavernia Lawson bring various claims relating to the foreclosure and sheriff's sale of their home located at 30715 Nelson Cir., Westland, Michigan ("the Property"). Before the Court is defendant Bank of America's motion to dismiss plaintiffs' amended complaint for failure to state a claim, pursuant to Fed. R. Civ. Pr. 12(b)(6). For the reasons set forth below, the Court will grant the motion.

# I.   Background

## A.   The Loan and Mortgage

Countrywide Bank ("Countrywide") loaned plaintiffs $210,400 on July 15, 2005.  On the same date, Plaintiffs executed a promissory note in favor of Countrywide and a mortgage on the Property as security for the note.   The mortgage was recorded with the Wayne County, Michigan Register of Deeds on August 1, 2005.  (Dkt. 16-2, Ex. 1 to Def.'s Br.).   The mortgage names Countrywide as the lender and Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for the lender and the lender's successors and assigns, as the mortgagee. (*Id.*).  The mortgage expressly grants rights in the property, including the power of sale, to MERS and its successors and assigns. (*Id.*).  The note provides for an initial fixed interest rate of 6.375%, changing on August 1, 2010 to an adjustable interest rate capped at 11.375%. (*Id.*).

Plaintiffs allege defendant was the loan servicer until July 1, 2011, although the record elsewhere indicates the servicer was BAC Home Loans Servicing, LP ("BAC").   (*Compare* Dkt. 11, Amended Compl. ¶ 17 *with* Dkt. 20-10, Ex. J to Pl.'s Resp.).   Saxon Mortgage

Services, Inc. ("Saxon") notified plaintiffs by letter dated July 8, 2011, that Saxon had obtained servicing of the loan. (Dkt. 20-8, Ex. H to Pl.'s Resp. 3). The letter indicated the outstanding amount of plaintiffs' mortgage loan was $239,482.76, of which $210,069.35 was unpaid principal. (*Id.*). The letter also expressly indicated that it was not a payoff statement, that Saxon was the servicer and defendant the creditor, and that plaintiffs had 30 days to contact Saxon to dispute the validity of any portion of the debt. (*Id.*).

Saxon again wrote to plaintiffs on August 17, 2011, informing them that the interest rate on their mortgage loan had been reduced from 3.5% to 3.0% as of August 1, 2011. (Dkt. 20-8, Ex. H to Pl.'s Resp. 2). Plaintiffs' monthly payment was also reduced from $1,051.66 to $998.01. (*Id.*). The letter indicated that plaintiffs' "projected" unpaid principal balance was $204,716.51. (*Id.*). The letter included the phone number for Saxon's customer service center. (*Id.*).

## B.   Assignment of the mortgage and note and plaintiffs' default

MERS assigned the mortgage and the note to defendant by instrument dated November 2, 2011. (Dkt. 20-1, Ex. A to Pl.'s Resp.).

The assignment was notarized in Dallas County, Texas and recorded with the Wayne County, Michigan Register of Deeds on November 8, 2011. (*Id.*). The date in the notary block, however, is November 11, 2011. (*Id.*).

On November 9, 2011, Saxon wrote to plaintiffs in response to their request to verify credit reporting information. (Dkt. 20-7, Ex. G to Pl.'s Resp. 2). The letter refers to enclosed documents confirming plaintiffs' payment terms and obligations and their payment history. (*Id.*). The letter also gives instructions for disputing the reported information. (*Id.*).

Saxon's foreclosure counsel notified plaintiffs by letter dated November 9, 2011, that plaintiffs had failed to make monthly payments and their loan was in default. (Dkt. 20-6, Ex. F to Pl.'s Resp.). The letter indicates the outstanding loan amount at the time was $237,624.45. (*Id.*). The letter also advises plaintiffs of their right to request mediation in order to seek modification of the loan. (*Id.*). Information is provided for obtaining a housing counselor and the State Bar of Michigan Lawyers Referral Service. (*Id.*). Plaintiffs had 14 days from the date of the letter to request mediation. (*Id.*).

4

Saxon again contacted plaintiffs by letter dated November 22, 2011, in response to a letter from plaintiffs requesting information pursuant to the Real Estate Settlement and Procedures Act, 12 U.S.C. § 2601 *et seq.* (Dkt. 20-10, Ex. J to Pl.'s Resp.). Saxon's letter states that the loan was originated through Countrywide on July 15, 2005, and that Saxon acquired servicing of the loan from BAC Home Loans Servicing, LP on July 1, 2011. (*Id.*). The letter also indicates that the information requested by plaintiffs had already been sent by Saxon on September 23, October 13, October 21, and November 14, 2011. (*Id.*).

## C.    Foreclosure proceedings and sheriff's sale

Defendant began foreclosure proceedings pursuant to Michigan's statute governing foreclosure by advertisement, Mich. Comp. Laws § 600.3204 *et seq.* Notice of plaintiffs' default was published on November 10, 2011, indicating plaintiffs owed $238,677.92 on the loan. (Dkt. 1-2, Ex. 1 to Notice of Removal 17). Notice of foreclosure was published and was posted on the Property in January 2012. (Dkt. 1-2, Ex. 1 to Notice of Removal 18; Dkt. 20-8, Ex. H to Pl.'s Resp.).

The Property was sold at sheriff's sale on February 9, 2012 to defendant for $103,700.  (Dkt. 1-2, Ex. 1 to Notice of Removal 19).  The statutory redemption period expired on August 9, 2012.  The day before, on August 8, 2012, plaintiffs filed suit in Wayne County Circuit Court, Michigan against Countrywide and defendant, bringing claims of wrongful foreclosure, fraudulent misrepresentation, quiet title, and accounting, and alleging defendant violated Michigan's statute regarding loan modification and is not the true party in interest.  (Dkt. 1-2, Ex. 1 to Notice of Removal).  Defendants removed the case to this Court on September 28, 2012.  The case was stayed and administratively closed on November 27, 2012, while the parties discussed settlement.  (Dkt. 5).

The case was reopened on April 16, 2014.  (Dkt. 9).  Defendant filed a motion to dismiss plaintiffs' complaint on April 25, 2014.  (Dkt. 10).  Plaintiffs then amended their complaint on May 19, 2014, dropping the claim for violation of Michigan's loan modification statute and adding Saxon Mortgage Services, Inc. as a defendant.  (Dkt. 11).

In their amended complaint, plaintiffs allege six counts stemming from defendant's foreclosure and purchase of the Property: 1) a claim

that defendant lacked standing to foreclose (Count I); 2) wrongful foreclosure (Count II); 3) fraudulent misrepresentation (Count III); 4) a quiet title action (Count IV); 5) a claim that defendant is not the true party in interest entitled to foreclose (Count V); and 6) a claim seeking an accounting (Count VI).  Oral argument was held on August 12, 2014. Defendant's motion to dismiss plaintiffs' amended complaint was filed on June 9, 2014, and is currently before the Court.[1]

## II.   Analysis

### A.   Standard for Motion to Dismiss

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests the sufficiency of a complaint.  When deciding such a motion, the court must "construe the complaint in the light most favorable to the plaintiff and accept all allegations as true." *Keys v. Humana, Inc.,* 684 F.3d 605, 608 (6th Cir.2012).  The court need not, however, accept as true "legal conclusions or unwarranted factual inferences."  *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as

---

[1] As of the date of this order, Saxon has not been served with the amended complaint and has not appeared in this case.

7

true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The "factual allegations must be enough to raise the right of relief above the speculative level." *Id.*

> Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief.

*Iqbal*, 556 U.S. at 679 (citations and internal quotation marks omitted).

In ruling on a motion to dismiss, the Court may consider the complaint as well as documents referenced in the pleadings or central to the claims, items of which a court may take judicial notice, matters of public record, items appearing in the case record, and exhibits of unquestioned authenticity that are attached to the complaint. "These matters are deemed to be a part of every complaint by implication." 5B

8

Wright, Miller & Kane, *Federal Practice & Procedure* § 1357 (3d ed. 1998); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

**B.   Plaintiff's claims**

1.   <u>Defendant lacks standing to foreclose (Count I)</u>

Plaintiffs allege that defendant lacks standing to foreclose, requiring the Court to set aside the foreclosure and sheriff's sale. Plaintiffs cite three grounds for this claim: 1) an assignment to either BAC or Saxon is missing from the chain of title; 2) the assignment of the mortgage from MERS to defendant was either fraudulently executed or never executed, because of a discrepancy between the dates on which the mortgage was notarized and recorded; and 3) the assignment was void because the mortgage and note were subject to a Pooling & Servicing Agreement as part of a securitized trust, and the assignment occurred after the closing date of the trust.

a.   <u>Plaintiffs' ability to challenge the foreclosure</u>

As an initial matter, Michigan law governing foreclosures by advertisement provides a mortgagor six months after a sheriff's sale in

which to redeem the property.  Mich. Comp. Laws § 600.3240(8).  After that period has expired, the mortgagor's "right, title, and interest in and to the property are extinguished."  *Conlin v. Mortg. Elec. Registration Sys., Inc.*, 714 F.3d 355, 359 (6th Cir. 2013) (quoting *Piotrowski v. State Land Office Bd.*, 302 Mich. 179 (Mich. 1942)).  Collateral attacks on the foreclosure process prior to the expiration of the redemption period toll neither the redemption period nor the expiration of the mortgagor's rights at the end of that period.  *Overton v. Mortgage Elec. Registration Sys.*, No. 284950, 2009 WL 1507342, at *1 (Mich. Ct. App. May 28, 2009).  After the redemption period expires, a foreclosure sale may only be set aside on a "clear showing of fraud, or irregularity."  *Conlin*, 714 F.3d at 359.  The fraud or irregularity "must relate to the foreclosure proceeding itself."  *Id.*

Here, the statutory redemption period expired on August 9, 2012. Plaintiffs can therefore only have the foreclosure and sale set aside on a clear showing of fraud or irregularity in the foreclosure proceedings. Plaintiffs allege that the assignment of the mortgage and note to defendant was either fraudulent or ineffective.  According to plaintiffs, the allegedly defective assignment constitutes a fraud or irregularity in

10

the foreclosure proceedings because defendant was not a proper foreclosing party.

   b.   <u>Plaintiffs' ability to challenge the assignment of the mortgage and note</u>

Plaintiffs' challenges to the foreclosure and sale rest on the alleged invalidity of the assignment of the mortgage and note from Countrywide / MERS to defendant. Plaintiffs lack standing to challenge the assignment. *Livonia Props. Holdings, LLC v. 12840-12976 Farmington Road Holdings, LLC*, 399 F. App'x 97, 102 (6th Cir. 2010) (stating that "a litigant who is not a party to an assignment lacks standing to challenge that assignment").

Furthermore, Michigan's foreclosure law only requires that the record chain of title evidence the assignment: "[i]f a party foreclosing a mortgage by advertisement is not the original mortgagee, a record chain of title shall exist prior to the date of the sale . . . evidencing the assignment of the mortgage to the party foreclosing the mortgage." Mich. Comp. Laws § 600.3204(3). It is undisputed that there is a recorded assignment of the mortgage and note from the original mortgagee, Countrywide Bank, through its nominee MERS, to

defendant Bank of America.  (Dkt. 16-3, Ex. 2 to Defendant's Brief in Support 2-3).  This satisfies the foreclosure statute.  The record chain of title "is not destroyed by an irregularity affecting the validity of a transfer."  *Carmack v. Bank of New York Mellon*, 534 F. App'x 508, 511 (6th Cir. 2013) (quoting *Livonia Props. Holdings*, 399 F. App'x at 101-02).

Even if plaintiffs had standing to challenge the assignment to defendant, they have nonetheless failed to allege fraud or irregularity that would plausibly entitle them to have the foreclosure and sale of the Property set aside.

### c.   The alleged missing links in the record chain of title

Plaintiffs allege a break in the chain of title because an assignment to either BAC or to Saxon is missing from the record chain of title.  (Dkt. 11, Amended Complaint ¶ 28).   Plaintiffs further allege this break in the chain of title requires setting aside the foreclosure and sale of the Property.

As an initial matter, it appears from the pleadings that BAC and Saxon held only servicing rights to the loan and, as such, would not

have been assigned the mortgage.  It is unsurprising, then, that BAC and Saxon would not appear in the record chain of title.

But even if assignments were indeed missing from the record chain of title, that is not a sufficient basis for challenging a foreclosure. As already stated, Michigan law only requires that the record chain of title "evidenc[es] the assignment of the mortgage to the party foreclosing the mortgage."  Mich. Comp. Laws §600.3204.  Both the Sixth Circuit and the Michigan Supreme Court have rejected the argument that unrecorded security assignments render a foreclosure by advertisement invalid.  *Livonia Props. Holdings, LLC v. 12840-12976 Farmington Road Holdings, LLC*, 399 F. App'x 97, 100-101 (6th Cir. 2010); *Residential Funding Co., LLC v. Saurman*, 490 Mich. 909, 910 (Mich. 2011) (citing *Arnold v. DMR Financial*, 448 Mich. 671, 678 (Mich. 1995) for the principle that "the validity of the foreclosure is not affected by any unrecorded assignment of interest held for security").

Plaintiffs also rely on the Michigan Court of Appeals' recent decision in *Fed. Home Loan Mortg. Assoc. v. Kelley,* No. 315082, slip op. at 7-10 (Mich. Ct. App. June 24, 2014) in arguing that the assignment of

13

the mortgage and note to defendant failed because the assignment was not recorded.

The *Kelley* court held that under the Michigan statute governing foreclosure by advertisement, Mich. Comp. Laws § 600.3204(3), a transferee that acquires a mortgage through a voluntary merger is required to record the mortgage in order to become entitled to foreclose. In *Kelley*, the original mortgagee was First National Bank, which then assigned the mortgage to ABN-AMRO.  ABN recorded the assignment. ABN later merged with CitiMortgage, Inc.  CitiMortgage ultimately foreclosed on plaintiffs' property, and appellant Federal Home Loan Mortgage Corporation bought the property at the sheriff's sale.  The Court of Appeals held that the assignment of the mortgage from ABN to Citi was defective because it was not recorded.

In their response and at the hearing on this motion, plaintiffs argue that, under *Kelley*, defendant was not entitled to foreclose because it had acquired the mortgage through merger with Countrywide, the original mortgagee. (*See* Dkt. 20, Pl.'s Resp. 24).  But it is undisputed that the assignment from Countrywide to defendant

14

was recorded on November 8, 2011. (Dkt. 20-1, Ex. A to Pl.'s Resp. 2). *Kelley* is therefore inapposite.

### d.   The alleged notary fraud

Plaintiffs also allege fraud in the notarizing of the assignment from MERS to defendant. The alleged fraud is based on the discrepancy between the recording date of November 8, 2011, and the notarization date of November 11, 2011. Alternatively, plaintiffs allege the discrepancy means that the assignment was never executed.

Michigan law provides that "any instrument received and recorded by a register of deeds shall be conclusively presumed to comply" with the legal requirements for recording an instrument assigning an interest in real estate. Mich. Comp. Laws § 565.201(4). There is no requirement regarding the date of notarization. *See* Mich. Comp. Laws § 565.201.

The assignment here is clearly notarized. (*See* Dkt. 16-3, Ex. 2 to Defendant's Brief in Support 2-3). Plaintiffs allege, based on the discrepancy in dates, that the assignment could not have been notarized before it was recorded on November 8, 2011. (Dkt. 20, Plaintiffs

15

Response 14).   Plaintiffs also allege, without further detail, that the notary's signature was forged.  (Dkt. 20, Plaintiffs' Response 15).  These are conclusory allegations that cannot plausibly support a claim that the assignment was fraudulent or ineffective.

e.   <u>The alleged violation of the Pooling & Servicing Agreement</u>

Plaintiffs allege the mortgage and the note were subject to a Pooling & Servicing Agreement ("PSA") governing a mortgage loan trust.  (Dkt. 11, Amended Compl. ¶ 32; Dkt. 20-5, Ex. E to Pl.'s Resp.). Plaintiffs further allege the assignment from MERS to defendant violated the PSA, because the assignment was made after the trust's closing date of August 31, 2005.  (Dkt. 11, Amended Compl. ¶¶ 33-36; Dkt. 20, Pl.'s Resp. 16).  On that basis, plaintiffs allege the assignment to defendant was void, and defendant was therefore not authorized to foreclose on the Property.  (Dkt. 20, Pl.'s Resp. 18-19).

As an initial matter, it is unclear from plaintiffs' allegations that the mortgage and note were, in fact, subject to a PSA.  While plaintiffs have submitted a PSA for Harborview Mortgage Loan Trust 2005-10 as Exhibit E to their response, plaintiffs have alleged no facts connecting

the mortgage and the note to that trust.  In fact, plaintiffs themselves state that "the original note and mortgage was [sic] obviously never transferred from MERS, Saxon, or BAC / Countrywide to the depositor [sc. of the trust] and the depositor never transferred the original note and mortgage to the trustee US Bank."  (Dkt. 20, Pl.'s Resp. 16).  If the mortgage and note were never transferred to the trust depositor or the trustee, it stands to reason that the mortgage and note were not subject to the trust's PSA.

Even if the mortgage and note were subject to the PSA, plaintiffs are neither parties to nor intended third-party beneficiaries of the PSA. Plaintiffs thus lack standing to challenge MERS's or defendant's compliance with the PSA.  *Livonia Props. Holdings*, 399 F. App'x at 102; *Estate of Jerry Malloy v. PNC Bank*, No. 11-12922, 2012 U.S. Dist. LEXIS 7351, at *4 (E.D. Mich. Jan. 23, 2012) (citing cases).  And again, Michigan's foreclosure-by-advertisement statute only requires a record chain of title evidencing the assignment of the mortgage to the foreclosing party.  That is present here.  The alleged violation of the PSA cannot support a claim that defendant lacked standing to foreclose.

f.    Conclusion

Plaintiffs cannot successfully challenge the foreclosure and sale of the property without showing fraud or significant irregularity in the foreclosure proceedings.  Plaintiffs have failed to allege facts showing such fraud or irregularity.  Moreover, plaintiffs lack standing to challenge either the assignment of the mortgage and note to defendant, or compliance of the assignment with the PSA.  Finally, the record chain of title clearly indicates assignment of the mortgage and note from MERS to defendant.  Accordingly, Count I must be dismissed.

2.    Wrongful foreclosure (Count II)

Michigan's foreclosure-by-advertisement statute requires a foreclosing party to be "the owner of the indebtedness or of an interest in the indebtedness secured by the mortgage or the servicing agent of the mortgage."  Mich. Comp. Laws § 600.3204(1)(d).  Plaintiffs allege defendant does not own the note or an interest in the note, and thus was not authorized to foreclose under the statute.

The assignment clearly shows that MERS assigned the note along with the mortgage to defendant. (Dkt. 16-3, Ex. 2 to Defendant's Brief

18

in Support of Motion to Dismiss).  The assignment was recorded on November 8, 2011.  As already discussed, plaintiffs' challenges to that assignment are unavailing.

Even if the assignment of the note were invalid, defendant nonetheless qualified as an "owner of . . . an interest in the indebtedness secured by the mortgage" and was therefore authorized to foreclose the mortgage.  *See* Mich. Comp. Laws § 600.3204.  In *Residential Funding Co., LLC v. Saurman*, 490 Mich. 909, 909 (Mich. 2011), the Michigan Supreme Court held that the record holder of a mortgage owns an "interest in the indebtedness—i.e., the ownership of legal title to a security lien whose existence is wholly contingent on the satisfaction of the indebtedness" and is thus authorized to foreclose under Mich. Comp. Laws § 600.3204(1)(d).  Here, because defendant held the mortgage, it also owned an interest in plaintiffs' indebtedness and was authorized to foreclose on the Property.  Accordingly, Count II must be dismissed.

3.   <u>Plaintiffs have not alleged prejudice</u>

Even if plaintiffs had stated a claim for an invalid foreclosure and sale under either Count I or Count II, they must allege prejudice in order to be entitled to relief.  The Michigan Supreme Court has held that "defects or irregularities in a foreclosure proceeding result in a foreclosure that is voidable, not void *ab initio*." *Kim v. J.P. Morgan Chase Bank, N.A.*, 493 Mich. 98, 115 (Mich. 2012).  To set aside the foreclosure sale, plaintiffs "must show that they were prejudiced by defendant's failure to comply with MCL 600.3204.  To demonstrate such prejudice, they must show that they would have been in a better position to preserve their interest in the property absent defendant's noncompliance with the statute." *Id.* at 115-16.

The alleged defect in the foreclosure proceedings here is that defendant was not authorized to foreclose because of an invalid assignment of the mortgage and note.  Plaintiffs must therefore allege facts showing plaintiffs would have been in a better position to keep their property absent the alleged defects in the assignment of the mortgage and note.  Plaintiffs have alleged no such facts.  Plaintiffs have not, for example, put forth a plausible argument that a party other

20

than defendant also claims rightful ownership of the mortgage, exposing plaintiffs to double liability on the debt. *See Livonia Props. Holdings*, 399 F. App'x at 102; *Goodwin v. CitiMortgage, Inc.*, No. 12-760, 2013 U.S. Dist. LEXIS 116897, at *4 n.1 (W.D. Mich. Aug. 19, 2013).

Plaintiffs allege "several different entities were demanding payment," which "made it impossible for Defendants to pay or know who the true party or owner that was entitled to receive payment [sic]." (Dkt. 20, Pl.'s Resp. 24). However, plaintiff fails to identify these "several different entities," and plaintiff's own submissions show that 1) from July 2011, Saxon claimed the right to receive payments on the loan as the servicer, and 2) in November 2011, defendant's foreclosure counsel notified plaintiffs of plaintiffs' default and right to seek a loan modification. (*See* Dkt. 20-8, Ex. H to Pl.'s Resp. 2-5). In short, from July 2011, only one entity – not several – sought payments from plaintiffs. Plaintiffs have thus failed to allege prejudice based on conflicting demands for payment.

Finally, plaintiffs allege prejudice based on their "receiving different amounts claimed owed." (Dkt. 20, Pl.'s Resp. 24). Plaintiffs

cite to three letters, submitted as an exhibit to plaintiffs' response brief. (*See* Dkt. 20-8, Ex. H to Pls' Resp. 2-5).

The first letter, from Saxon and dated July 8, 2011, specifies a total debt of $239,482.76. This letter was meant to validate the amount of the debt outstanding and provided a means for plaintiffs to dispute the amount. The second letter, also from Saxon, provided a "projected unpaid principal balance of $204,716.51." (*Id.* at 2, emphasis added). The letter is meant to inform plaintiffs of a reduction in their interest rate and monthly payment. (*Id.*). Not only does the letter specify that the amount only includes the outstanding loan principal, but it also states that the letter is "for informational purposes only" and not for collection of a debt. (*Id.*). The third letter, from defendant's foreclosure counsel and dated November 9, 2011, specifies an outstanding debt of $237,624.45. (*Id.* at 4).

The fact that the total amount of the debt differs slightly among three letters sent over a period of four months does not suggest plaintiffs were thereby hindered in continuing to make monthly payments. In fact, only one letter – the one from August 17, 2011 –

specifies plaintiffs' monthly payment, and plaintiffs point to no conflicting information regarding that amount.

In sum, even if plaintiffs had stated a claim for wrongful foreclosure, they have failed to allege prejudice that would justify setting aside the foreclosure and sale.

### 4.   Fraudulent misrepresentation (Count III)

Plaintiffs allege defendant and its agents or servicers represented that plaintiffs owed no debt on the mortgage and that the foreclosure had been redeemed.  Plaintiffs further allege defendant made those representations to induce plaintiffs to stop making mortgage payments. Plaintiffs claim they relied on those representations in ceasing to make payments on the mortgage and in not challenging the sheriff's sale. (Dkt. 11, Amended Complaint ¶¶ 52-57).

This claim fails to satisfy the requirements under *Iqbal* and Fed. R. Civ. P. 9(b).  Rule 9(b) requires plaintiffs alleging fraud to "state with particularity the circumstances constituting fraud."  At a minimum, plaintiffs must "allege the time, place, and content of the alleged misrepresentation . . . the fraudulent scheme; the fraudulent intent of

the defendants; and the injury resulting from the fraud." *Coffey v. Foamex L.P.*, 2 F.3d 157, 161-62 (6th Cir. 1993).

Here, plaintiffs have only alleged that defendant "and its agents / servicers made material representations that there was no debt owing on this mortgage and note." (Dkt. 11, Amended Complaint ¶ 52). It cannot be discerned from the amended complaint when the alleged misrepresentation was made, who made it, or in what form it was made. Plaintiffs only state that the alleged misrepresentation "is reflected in Plaintiff's credit report." (*Id.*). Plaintiffs have thus failed to allege fraud with the particularity required by Rule 9(b).

Plaintiffs have also failed to state a claim for fraudulent misrepresentation. Under Michigan law, a plaintiff alleging fraudulent misrepresentation must show:

> (1) That defendant made a material misrepresentation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury.

*Collins v. Citimortgage, Inc.*, 974 F. Supp. 2d 1034, 1039-40 (E.D. Mich. 2013).  "All of the elements must be found to exist; the absence of any one of them is fatal to recovery."  *Snell v. Wells Fargo Bank,* No. 11-12018, 2012 U.S. Dist. LEXIS 42828, at *4 (E.D. Mich. Mar. 28, 2012) (citing *Hi-Way Motor Co. v. Int'l Harvester Co.*, 398 Mich. 330 (1976).

Plaintiffs allege defendant represented there was no debt owing on the mortgage and note.  Plaintiffs point to a credit report as "reflecting" the alleged representation.  But the credit report is not a representation made by defendant; it is a representation made by a credit reporting agency.  Plaintiffs have thus failed to allege that <u>defendant</u> made a material representation that was false.

Moreover, the report and the information therein postdate the foreclosure and sheriff's sale.  (*See* Dkt. 20-7, Exhibit G to Plaintiffs' Response 3-4).  Plaintiffs submitted a credit report as part of a single exhibit to their response.  The first page of the exhibit is a letter from defendant Saxon, dated November 9, 2011, confirming that Saxon had verified the correctness of the information related to plaintiff's mortgage and note.  (*Id.* at 1).  The remaining pages of the exhibit are a copy of plaintiffs' credit report.  (*Id.* at 3-4).  But the report is dated

October 13, 2013 – over two years after the verification letter from Saxon, and well over a year after the sheriff's sale of the Property. And the information in the report dates to July 2012 – again, well after the foreclosure and sheriff's sale. The report also indicates "foreclosure" under the loan account. Plaintiffs clearly could not have relied on this report or on the information therein in ceasing to make payments on the mortgage or in failing to challenge the sheriff's sale. Plaintiffs have thus failed to allege sufficient facts to state the reliance element of their fraud claim.[2]

Finally, plaintiffs fail to plead facts that would satisfy Michigan's statute of frauds. Michigan law bars actions against financial institutions to enforce "any promise or commitment to waive a provision of a loan, extension of credit, or other financial accommodation" unless the promise is in writing and signed by the financial institution. Mich. Comp. Laws § 566.132(2)(c). Plaintiffs have failed to allege the existence of any such writing supporting their claim that defendant represented to them that plaintiffs owed no debt on the mortgage. As

---

[2] Plaintiffs also rely on the October 2013 credit report in arguing that they were not in default. (Dkt. 20, Pl.'s Resp. 19-20). Again, the report postdates the foreclosure and sale of the Property by more than a year, and clearly cannot serve as evidence that plaintiffs were not in default at the time of foreclosure.

explained above, the 2013 credit report is not a writing created or signed by defendant, and thus does not satisfy the statute of frauds.

Because plaintiffs have pled neither sufficient facts to state a claim of fraud nor facts satisfying Michigan's statute of frauds, Count III must be dismissed.

### 5.    Quiet Title (Count IV)

Plaintiffs allege that defendant did not properly have title to the Property because the sheriff's sale was invalid.  Defendant argues that plaintiff alleges no facts supporting a plausible claim to relief, but only makes conclusory statements that defendant is not the true holder of title to the Property.

To properly assert a claim for quiet title under Michigan law, "[t]he complaint must allege: (a) the interest the plaintiff claims in the premises; (b) the interest the defendant claims in the premises; and (c) the facts establishing the superiority of the plaintiff's claim."  Mich. Court Rules § 3.411(B)(2).

As discussed above, plaintiffs have no legal interest in the property; they lost it upon expiration of the redemption period after

August 9, 2012. Plaintiffs have not alleged facts indicating they attempted to redeem the Property within the redemption period. *See Snell*, 2012 U.S. Dist. LEXIS 42828, at *3. The fact that plaintiffs filed this action in state court one day before expiration of the redemption period did not toll the redemption period. *See Overton*, 2009 WL 1507342, at *1. Plaintiffs argue the redemption period never began because of the allegedly improper assignment of the mortgage, but cite no authority for this proposition. (Dkt. 20, Pl.'s Resp. 9).

Because plaintiffs have not alleged facts establishing their interest in the Property, Count IV must be dismissed.

### 6.    Defendant is not true party in interest (Count V)

Plaintiffs allege defendant is not the holder in due course of the original note or mortgage, and therefore has no legal right to enforce the note and mortgage. According to plaintiffs, defendant is thus not the real party in interest entitled to foreclose on the mortgage. (Dkt. 11, Amended Compl. ¶¶ 70-74).

Even if defendant were not a holder in due course, that would not be a legally valid basis for setting aside a completed foreclosure. *E.g.*,

28

*Murray v. New York Mortg. Co.*, No. 12-12452, 2012 WL 5830245, at *7 (E.D. Mich. Nov. 16, 2012); *Schare v. Mortg. Elec. Registration Sys.*, No. 11-11889, 2012 WL 2031958, at *2 (E.D. Mich. June 6, 2012) ("There is no Michigan statutory requirement that to foreclose by advertisement the underlying note evidencing the indebtedness had to be endorsed to MERS or that MERS be a holder or holder-in-due-course of the note"). Count V must therefore be dismissed.

### 7.   Accounting (Count VI)

Plaintiffs allege that defendant fraudulently inflated escrow costs and accepted payments from plaintiffs without crediting those payments to plaintiffs' account. Plaintiffs therefore seek an accounting to determine the "real amount required to reinstate the mortgage and prevent foreclosure." (Dkt. 11, Amended Complaint ¶¶ 77-78).

An accounting is an "extraordinary" equitable remedy that is not proper where either the parties' contractual agreement or discovery is sufficient to determine the amounts at issue. *Colbert v. Fannie Mae*, No. 12-13844, 2013 WL 1629305, at *39-40 (E.D. Mich. Apr. 16, 2013) (holding that "[b]ecause sums due under a mortgage and note can be

determined by the parties' contractual agreement, an accounting is unavailable"); *Murray*, 2012 WL 5830245, at *23 (dismissing accounting claim identical to plaintiffs' claim here).  Plaintiffs can determine the amounts due under the mortgage and the amounts they actually paid by reference to the mortgage agreement.

Plaintiffs maintain that the amount due under the mortgage could not be determined, because "[w]ithin a 30 day period plaintiff received three different amounts as to what defendant claimed to be deficient." (Dkt. 20, Plaintiffs' Response 23).   Plaintiffs cite to three letters, submitted as an exhibit to plaintiffs' response.  (*See* Dkt. 20-8, Ex. H to Plaintiffs' Response 2-5).  The Court has already discussed the contents of the letters above.  The fact that the amount of the debt differs slightly among the three letters does not suggest that the amount due at the time of foreclosure could not be determined by reference to the mortgage agreement or by responding to the letters with a specific inquiry.  Count VI must therefore be dismissed.

## III.   Conclusion

Accordingly, defendant's Motion to Dismiss (Dkt. 16) is GRANTED.

IT IS SO ORDERED.

Dated: September 4, 2014                /s/Judith E. Levy
Ann Arbor, Michigan                     JUDITH E. LEVY
                                        United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on September 4, 2014.

                              s/Felicia M. Moses
                              FELICIA M. MOSES
                              Case Manager